Hon. Robert L. Cahill Chairman, New York State Bridge Authority
Your counsel has asked whether armed forces of the United States are entitled to free passage over the bridges of the New York State Bridge Authority.
Article 2, title 2 of New York's Public Authorities Law creates the New York State Bridge Authority (Public Authorities Law, §§ 525-542). Under section 538 of its enabling act, the Authority is required to maintain and collect tolls of its bridges* and apply those funds towards, inter alia, the cost of maintaining and operating the bridges and payments of principal and interest on bonds issued by the Authority (id., § 538 [2]).
Prior to 1944, New York law allowed armed forces of the United States and members of the New York militia to make crossings over rivers by bridge, tunnel or ferry free of charge during wartime (see Military Law, §237 [old]).** In 1944, the law was amended and the exemption from tolls for the United States armed forces was removed.*** A memorandum of Robert Moses, who was chairman of the Triborough Bridge Authority at the time, outlines some of the reasons for eliminating the exemption provided by section 237:
 "The Triborough Bridge Authority shows a net loss of $1,470,527.45 for 1943 and it is imperative that we take advantage of every possible source of revenue during the war emergency. With the enormous increase in military and naval activities and the sharp decline in civilian traffic due to government restrictions on the use of gasoline and rubber, free use of Authority crossings by military and naval vehicles of the United States presents serious problems of revenue and upkeep which cannot be ignored. During the year 1943, approximately 300,000 vehicles of the armed forces of the United States crossed the toll bridges of Triborough Bridge Authority free, which meant a loss to the Authority of approximately $70,000.
 "The Federal government is required to pay for the use of all other facilities, such as rail and ship transporation, telephone, telegraph and cable communication, food, clothing, etc., and there appears no good reason why we should not be entitled to charge tolls which constitute our only revenue" (Legislative Bill Jacket, L 1944, ch 326).
In a 1944 opinion issued shortly after the enactment of the amendment to section 237, the Attorney General's office concluded that the exemption for New York State military personnel remained intact (1944 Op Atty Gen 107):
 "In my opinion, a member of the New York Guard, while performing ordered military duty or directly going to or returning from such duty, is entitled to free passage through toll gates, together with the vehicle in his direct custody and control without regard to whether such vehicle is or is not the property of the State" (id., at 109).
The exemption for New York military personnel was expanded in 1949 to include members of the Air National Guard (L 1949, ch 624).* In 1953 (L 1953, ch 420), section 237 was redrafted to its current form, which reads:
 "Any person belonging to the organized militia[**] shall, together with the conveyance in his charge and property of the state or of the United States in his charge, be allowed to pass free through all toll-gates and tunnels and over all toll-bridges and also over all ferries if he is in uniform or presents an order for duty or certificate of an order for duty" (Military Law, § 237).
Your question is whether United States armed forces are entitled to an exemption from tolls under this or any other provision of law.
Clearly, the provisions of section 237 do not authorize an exemption for Federal armed forces. The exemption is granted only to members of the army national guard, air national guard, New York naval militia, New York guard and other New York forces. As its legislative history indicates, it was amended in 1944 with the specific intention of eliminating the exemption for Federal forces (L 1944, ch 321;*** see Brooklyn Richmond Ferry Inc. v United States, 167 F.2d 330, 331-332 [2d Cir, 1948]).
In addition, we are unaware of any Federal statute which would grant the Federal armed forces an exemption from crossing fees. As found in Gouax vBovay (105 F.2d 256 [5th Cir], cert denied 308 U.S. 607 [1939]):
 "Where the United States have aided the construction of bridges or railroads, reduced charges or complete immunity from tolls for the passage of troops and public property have often been by clear language stipulated for. Where no such aid has been given such a stipulation is not to be expected and ought to appear by language free from doubt" (105 F.2d at 257-258; see also, U.S. v Columbia River-Longview Bridge Co., 99 F.2d 287 [9th Cir, 1938]).
Indeed, relevant Federal laws contemplate the scenario of Federal armed forces paying bridge and tunnel tolls. 33 U.S.C. § 492 provides, with regard to certain bridges, that "no higher charge shall be made for the transmission over the same of the mails, the troops, and the munitions of war of the United States than the rate per mile paid for the transportation over any railroad, street railway, or public highway leading to said bridge". In addition, 10 U.S.C. § 7523 provides that naval appropriations are available for "the payment or reimbursement of ferry, bridge, and similar tolls. . .". Both these statutes clearly contemplate the payment of bridge and tunnel tolls by the United States armed forces.
We conclude that the armed forces of the United States are not entitled to free passage over bridges of the New York State Bridge Authority. The exemption from tolls is granted only to members of the army national guard, air national guard, New York naval militia, New York guard and other New York forces.
* The Authority controls and operates the Mid-Hudson Bridge, the Rip Van Winkle Bridge, the Bear Mountain Bridge, the Kingston-Rhinecliff Bridge and the twin spans at Newburgh-Beacon.
** Prior to 1944, section 237 read as follows:
 "Any person belonging to the military or naval forces of the state or of the United States shall, together with his conveyance and the military property of the state or of the United States in his charge, be allowed to pass free through all toll-gates and over all toll-bridges and also over all ferries if he is in uniform or presents an order for duty or certificate of membership in the military or naval service of the state or of the United States. The provisions of this section so far as they relate to the military or naval forces of the United States shall apply only during periods when the United States is at war."
*** Following amendment, section 237 read as follows:
 "Any person belonging to the military or naval forces of the state shall, together with the conveyance and property of the state in his charge, be allowed to pass free through all toll-gates and over all toll-bridges and also over all ferries if he is in uniform or presents an order for duty or certificate of membership in the military or naval service of the state."
* Chapter 624 of the Laws of 1949 amended the first sentence of section 237 to read
 "Any person belonging to the military (including air) or naval forces of the state shall . . ."
** Section 1 (10) of the Military Law defines "militia" in the following way:
 "The term `force of the organized militia' shall mean, severally, the army national guard, the air national guard, the New York naval militia, the New York guard when organized, and such additional forces as may be created by the governor pursuant to section two of this chapter."
*** To avoid the scenario of "a civil service employee hold[ing] up the conduct of a war" by collecting a bridge toll (Legislative Bill Jacket, L 1949, ch 624, 4/8/49 letter of Assemblyman L. Judson Morhouse), the Port of New York Authority negotiated agreements with the four branches of the armed forces. Under these agreements, a flat monthly fee was paid for use of the Authority's bridges and tunnels (Legislative Bill Jacket, L 1944, ch 326, 11/9/43 letter of Austin J. Tobin, Executive Director, the Port of New York Authority). In this way, the State can receive the fares without impeding the transfer of troops or material.